[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, a corporation, whose principle officer and stockholder is Reginald P. Finno (hereinafter, "Finno"), brings this action attempting to enforce a real estate contract with the defendant, Eleanor S. Landry (hereinafter, "Landry"), for the purchase of land located in the town of Prospect, Connecticut. It is the plaintiff's claim that on March 21, 1995, it entered into two mutually dependent written contracts, the first agreement for the purchase of two lots on Salem Road, (hereinafter "Salem Road property") and a second contract for the purchase of 17 acres of land on Spring Road, (hereinafter "Spring Rd property"). It is the plaintiff's claim that the defendant performed on the first of the two dependent agreements but refused to perform on the second agreement. The plaintiff seeks damages for breach of contract and or unjust enrichment and specific performance. The defendant, who represents herself pro se, has filed an answer which in effect denies the allegations of the plaintiff's complaint and has filed an affirmative claim entitled "Defendant seeks relief from the courts" dated April 30, 1996 which the court will consider a counterclaim. In her counterclaim the defendant alleges that the claimed contract was fraudulent, illegal and unlawful and seeks six million dollars in damages. The plaintiff has applied for and received a prejudgment attachment in the amount of $400,000.00.
This case was tried in November of 1996 and the court set deadlines for the filing of briefs. The pro se defendant, Ms. Landry requested extensions of this deadline which were granted by the court. Ms. Landry's brief was filed on February 13, 1997.
The court accepts as credible the testimony of Mr. Finno, who testified on behalf of the plaintiff corporation. Mr. Finno, a developer, testified that he became interested in the Spring Road property and began to negotiate the purchase of this land with a one John Hicks who told him he represented the owner Mrs. Landry. The Spring Road property of 17 acres had an old farmhouse located thereon, was not subdivided into building lots and was therefore attractive to Mr. Finno who felt he could obtain subdivision approval and develop the parcel into a residential subdivision. He was not interested in the two approved lots on the Salem Road piece primarily because of their location. He ultimately met with Mr. Hicks and Mrs. Landry's attorney, Gerald Labriola, and was told that Mrs. Landry would not consider the sale of the Spring Rd property unless it was sold with the Salem Road lots. Mr. Finno was told that Mrs. Landry had a number of pressing debts and that she would be able to satisfy her creditors, for the most CT Page 3090 part, with the sale of the approved Salem Road lots which would close immediately. Landry added that she would be willing to wait for Finno to get subdivision approval before the closing on the Spring Road property. Mr. Finno testified that although he was not interested in the Salem Road property and was only interested in the Spring Road acreage, he was told by Mr. Hicks and Attorney Labriola that there could be no deal unless the Salem Road property was included. He agreed therefore to purchase both parcels since that was the only way he could buy the Spring Road land. After negotiating with Mr. Hicks and Attorney Labriola a purchase price of $100,000.00 was agreed upon for the Salem Road lots and $350,000.00 for the Spring Road parcel. Since Mrs. Landry was in Texas and Mr. Hicks and Attorney Labriola represented that Mr. Hicks was her Attorney In Fact, contracts for both parcels were executed on March 21, 1995, and were made exhibits in this action, the contract for the Salem Road piece (Plaintiff's Exhibit 2) and, the contract for the Spring Rd parcel (Plaintiff's Exhibit 3). The contracts provide that they were dependent on each other and Mr. Finno paid a 1% deposit on both. It is Mrs. Landry's claim that Mr. Hicks did not possess a valid power of attorney and that the contracts were illegal and therefore unenforceable.
The court does not agree with the Landry position that the contracts, in particular the second contract Pl. Ex. 3, were unenforceable. Sometime before Mr. Hicks and Attorney Labriola came to a meeting of the minds with Mr. Finno as to a final purchase price during their negotiations, Mr. Labriola sent to Mrs. Landry a Power of Attorney for her to sign so that Mr. Hicks could execute documents on her behalf. Mrs. Landry returned and signed the Power of Attorney to Mr. Labriola but added language on the first page of the returned power (Plaintiff's Exhibit 48) which provided that she was to sign all documents "rather than exercising this power of attorney, where time permits." It is the claim of Mr. Hicks and Attorney Labriola that they felt that time was of the essence and that the contracts were therefore executed by Mr. Hicks using the Power as revised by Mrs. Landry (Pl. Ex 48). In any event, on May 8, 1995, after the contracts were signed by Mr. Hicks, Mr. Labriola wrote to Mrs. Landry (Defendants Exhibit 11) and sent her warranty deeds and a new front page for the power of attorney eliminating the limiting language that Mrs. Landry had inserted, for her initial and return. Mrs. Landry signed the warranty deed for the Salem Road lots and returned it to Mr. Labriola but did not initial or return the new front page of the power of attorney. If Mrs. CT Page 3091 Landry wanted to repudiate the contracts that were signed on her behalf by Mr. Hicks she could have at this point refused to sign the warranty deed for the Salem Road property and directed her attorney to return all deposits and consider the agreements null and void. Instead Mrs. Landry signed the Salem Road deed and permitted the sale to take place. On May 11, 1995 the Salem Road property was closed. Finno tendered payment of $100,000.00, disbursements of $95,345.63 were made in accordance with the closing statement (Plaintiffs Exhibit 49) including payment to Mrs. Landry's creditors. The balance of $4,653.37 which Mr. Labriola noted on the closing statement that was to be held in a trustee account was ultimately returned to Mrs. Landry at her request.
The position of Mrs. Landry, that the second agreement is unenforceable, defies her actions in accepting the proceeds from the sale of the Salem Road property which was procured through the same contract signed by the same Attorney in Fact which she now argues was illegal and fraudulent. In any event, the court finds that the Power of Attorney as amended by Mrs. Landry was properly used in accordance with her specific authorization since both Mr. Hicks and Mr. Labriola felt that "time did not permit" the contract to be sent to Mrs. Landry in order to finalize the deal with Finno. Therefore Mr. Hicks properly acted in accordance with the power signed by Mrs. Landry. In addition, even if Mr. Hicks acted contrary to his authority his actions were ratified by Mrs. Landry when she signed the deed for the Salem Road. Iots and accepted the proceeds from the sale of that property. SeeHartford Accident Indemnity Co. v. South Windsor Bank TrustCo., 171, Conn. 63, 72, 368 A.2d 76 (1976); Young v. Data SwitchCorp., 231 Conn. 95, 111, 646 A.2d 852 (1994). It is also interesting to note that Mrs. Landry has never returned the deposit on the Spring Road property to this date in spite of the fact that she claims this agreement was procured through fraud and deceit. The court finds that the agreements Plaintiff's Exhibits 2 3 are mutually dependent as claimed by the plaintiff and that they are and were legally enforceable.
After the closing on the Salem Road property the defendant discharged Mr. Labriola. Mr. Finno proceeded to move forward in securing the necessary permits so as to meet his obligations under the agreement and on or about the end of December of 1995, obtained subdivision approval from the Town of Prospect and was prepared to close on the Spring Road property. Mrs. Landry, at that time, was unwilling to sell and this law suit followed. As CT Page 3092 stated above, the agreement as to the sale of the Spring Road property is an enforceable contract and the court finds that the plaintiff has fulfilled all of the contingencies provided in that agreement and was ready willing and able to perform in connection therewith. The court finds that the defendant Mrs. Landry has breached her obligations under that agreement and that judgment should enter on behalf of the plaintiff.
The plaintiff seeks damages and/or specific performance. Specific performance under most circumstances would be an appropriate remedy, however in this case since the court would have to make such an order contingent on subdivision reapproval and the plaintiff obtaining suitable financing. The court would then have to order an alternative award of money damages if the plaintiff were not successful in his new subdivision application. In addition a contingent award of specific performance could create a number of other problems if, for example, the Town only approved 14 lots instead of the 15 lots they originally approved. Since an award of specific performance rests on the sound discretion of the court; it is the judgment of this court that such an award will only spawn further litigation and therefore will not make such an award. See Farmers Mechanics SavingsBank v. Sullivan, 216 Conn. 341, 355, 579 A.2d 1054 (1990);Four D's, Inc. v. Mattera, 25 Conn. App. 308, 315,594 A.2d 484 (1991).
The court will award the following damages to the plaintiff: The plaintiff has expended to date out of pocket expenses totaling $43,111.66 and $15,000.00 in attorneys fee which the court finds were all incurred in furtherance of his enforceable agreement with Mrs. Landry. The plaintiff should recover the $3,000.00 deposit that was never returned to him. In addition the plaintiff has lost the anticipated profit on the fifteen building lots that were approved. Mr. Finno testified that he could have reasonably expect to realize a 30% profit on the sale of each developed lot. Finno anticipating approval of the subdivision and the transfer of title to the property pursuant to the agreement with Landry entered into a contract for the sale of lot for $67,900.00.(see Plaintiff Ex 36). The court finds that $67,900.00 is the fair market value of an undeveloped lot in the subdivision and that the loss of profits the plaintiff incurred as a result of this breach of contract was $305,550.00. (15 x $20,370). The court will therefore render judgment in favor of the plaintiff in the amount of $366,661.66 on the complaint. The court does not find any of the claims of the defendant credible as to her CT Page 3093 counterclaim and therefore will render judgment for the plaintiff Finno on the counterclaim. Judgment shall enter accordingly.
PELLEGRINO, J.